[Cite as *State v. Bunch*, 2024-Ohio-5513.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

CHAZ DIONYOUS BUNCH,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 MA 0030**

---

Motion to Certify Conflict

**BEFORE:**
Katelyn Dickey, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Overruled.

---

*Atty. Gina DeGenova*, Mahoning County Prosecutor, *Atty. Ralph M. Rivera*, Chief, Criminal Division, and *Atty. Edward A. Czopur*, Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. Joseph C. Patituce*, Patituce & Associates, LLC, for Defendant-Appellant.

Dated: November 21, 2024

**PER CURIAM.**

{¶1} On October 31, 2024, Appellant, Chaz Dionyous Bunch, filed a motion pursuant to App.R. 25 to certify this case to the Supreme Court of Ohio on the basis of a conflict.  Appellant asserts this court's decision in *State v. Bunch*, 2024-Ohio-5085 (7th Dist.) is in conflict with decisions of the First, Fourth, Eighth, Eleventh, and Twelfth District Courts of Appeal: *State v. Sargent*, 2006-Ohio-6823 (1st Dist.); *State v. Echols*, 128 Ohio App.3d 677 (1st Dist.1998); *State v. Underwood*, 2024-Ohio-2273 (4th Dist.); *State v. Bradley*, 2009-Ohio-460 (8th Dist.); *State v. Bandy*, 2008-Ohio-1494 (11th Dist.); *State v. Henderson*, 2002-Ohio-6715 (11th Dist.); *State v. Brant*, 2000 WL 1114845 (11th Dist. Aug. 4, 2000); and *State v. Green*, 2018-Ohio-3991 (12th Dist.).  Appellee, the State of Ohio, filed a response on November 12, 2024.

{¶2} App.R. 25, "Motion to certify a conflict," states in part:

> (A) A motion to certify a conflict under Article IV, Section 3(B)(4) of the Ohio Constitution shall be made in writing no later than ten days after the clerk has both mailed to the parties the judgment or order of the court that creates a conflict with a judgment or order of another court of appeals and made note on the docket of the mailing, as required by App. R. 30(A). . . . A motion under this rule shall specify the issue proposed for certification and shall cite the judgment or judgments alleged to be in conflict with the judgment of the court in which the motion is filed.

App.R. 25(A).

{¶3} Article IV, Section 3, "Organization and jurisdiction of courts of appeals," states in part:

> Whenever the judges of a court of appeals find that a judgment upon which they have agreed is in conflict with a judgment pronounced upon the same question by any other court of appeals of the state, the judges shall certify the record of the case to the supreme court for review and final determination.

Ohio Const. Article IV, Section 3(B)(4).

Case No. 24 MA 0030

Hence, the following conditions must be met before and during certification pursuant to Section 3(B)(4), Article IV of the Ohio Constitution:

First, the certifying court must find that its judgment is in conflict with the judgment of a court of appeals of another district and the asserted conflict must be "upon the same question." Second, the alleged conflict must be on a rule of law – not facts. Third, the journal entry or opinion of the certifying court must clearly set forth that rule of law which the certifying court contends is in conflict with the judgment on the same question by other district courts of appeals. (Emphasis deleted.)

*Whitelock v. Gilbane Bldg. Co.*, 66 Ohio St.3d 594, 613 N.E.2d 1032, (1993), paragraph one of the syllabus. In addition, the issue proposed for certification must be dispositive of the case. *State ex rel. Davet v. Sutula*, 131 Ohio St.3d 220, 2012-Ohio-759, 963 N.E.2d 811, ¶ 2.

"Factual distinctions between cases do not serve as a basis for conflict certification." *Id.* at 599. In *Whitelock*, the Ohio Supreme Court dismissed the appeal on the grounds that the conflict was improperly certified and urged appellate courts to certify "only those cases where there is a true and actual conflict on a rule of law." *Id.*

*State v. Rice*, 2022-Ohio-4176, ¶ 4-5 (7th Dist.).

**{¶4}** This court decided *Bunch* on October 22, 2024. *Bunch*, 2024-Ohio-5085. Appellant filed his motion to certify a conflict nine days later on October 31, 2024. Thus, Appellant's motion is timely filed. App.R. 25(A). Appellant cites eight judgments alleged to be in conflict with the judgment of this court. *Id;* (10/31/2024 Appellant's Motion to Certify Conflict, p. 2-3); *Sargent*, 2006-Ohio-6823 (1st Dist.); *Echols*, 128 Ohio App.3d 677 (1st Dist.1998); *Underwood*, 2024-Ohio-2273 (4th Dist.); *Bradley*, 2009-Ohio-460 (8th Dist.); *Bandy*, 2008-Ohio-1494 (11th Dist.); *Henderson*, 2002-Ohio-6715 (11th Dist.); *Brant*, 2000 WL 1114845 (11th Dist.); and *Green*, 2018-Ohio-3991 (12th Dist.).

**{¶5}** Appellant also specifies two issues proposed for certification pursuant to App.R. 25(A):

1. The failure to call an eyewitness expert witness is ineffective assistance of counsel where the central issue of the State's case centers on the identification of the defendant and the only way for the jury to learn of factors and variable concerning eyewitness identification can come from is an expert witness.

2. The failure to call an expert witness to advance a critical defense theory of innocence where there is no other avenue to introduce such testimony is ineffective assistance of counsel when that testimony is material to the guilt or innocence of the defendant.

(10/31/2024 Appellant's Motion to Certify Conflict, p. 3).

**{¶6}** In *Bunch*, 2024-Ohio-5085, this court stated in detail:

Regarding eyewitness identification, "[g]enerally, the decision not to call an expert witness does not constitute ineffective assistance of counsel because that decision is solely a matter of trial strategy." *State v. Tobert*, 2003-Ohio-675, ¶ 19 (1st Dist.), citing *State v. Coleman*, 45 Ohio St.3d 298, 307-308 (1989)

The trial court was well within its discretion to deny Appellant's postconviction petition as Appellant failed to show that his trial counsel's performance was deficient and further failed to show that he was prejudiced by counsel's decision not to employ an eyewitness identification expert. DiMartino's considered choice not to employ an eyewitness identification expert did not make his performance deficient under both prongs of *Strickland.*

There exists no precedent that requires the use of an eyewitness identification expert. *See Horton v. Richard*, 2013 WL 5492337, *19 (S.D.

Ohio Oct. 1, 2013) ("'No precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment.'") (Internal citation omitted). Our Sister Court found that trial counsel was not ineffective in choosing not to employ an eyewitness identification expert as trial counsel thoroughly cross-examined the victims on their identification of the defendant. *State v. Horton*, 2011-Ohio-1387, ¶ 20 (10th Dist.). Similar to *Horton*, trial counsel here also thoroughly cross-examined the victim and continued to argue about misidentification throughout the trial.

Appellant stresses that Dr. Kovera explained at the post-conviction hearing that M.K.'s eventual identification of him was contaminated by M.K.'s observations of Appellant on the news and that the identification was highly suggestive. Dr. Kovera relied on these conclusions when she claimed that an eyewitness expert's testimony could have impacted the outcome of the trial.

In *State v. Knight*, 2024-Ohio-2176 (7th Dist.), the appellant claimed the trial court improperly barred his expert (Dr. Kovera) from offering an opinion as to the specific reasons why she thought a victim's identification of the appellant as the shooter was mistaken. *Id.* at ¶ 39-40, 112. Relying on the Supreme Court of Ohio's decision in *State v. Buell*, 22 Ohio St.3d 124 (1986), this court stated, "Evid.R. 702 did not allow a psychological expert to opine about the credibility of a specific eyewitness' identification testimony unless the eyewitness had a physical or mental impairment that may affect that witness' ability to observe or recall events." *Id.* at ¶ 115. This court found the appellant's assignment of error on that issue lacked merit. *Id.* at ¶ 121.

Here, Dr. Kovera claimed at the post-conviction hearing that the outcome of the trial could have been different if an eyewitness identification

expert had testified. However, Dr. Kovera's testimony relied upon information that she could not convey to a jury. Thus, Dr. Kovera's testimony cannot lend support to an argument that trial counsel rendered ineffective assistance by not calling her, or another expert, at the jury trial.

Similarly, Attorney Koblentz claimed at the post-conviction hearing that an eyewitness identification expert should have been brought in to tell the jury that M.K.'s identification was not reliable. Like Dr. Kovera, Attorney Koblentz improperly believed that an expert could testify that M.K.'s identification was not reliable. *Knight* at ¶ 115; *State v. Patterson*, 2015-Ohio-873, ¶ 61 ("It is the factfinder, not an expert, who is properly charged with assessing the credibility or 'trustworthiness' of a witness.")

The references by the Supreme Court of Ohio in *Bunch*, 2022-Ohio-4723, to *Hinton v. Alabama*, 571 U.S. 263 (2014) and *State v. Herring*, 2014-Ohio-5228, are only relevant to its finding that an evidentiary hearing was warranted.

In *Hinton*, the United States Supreme Court held that "[u]nder that (*Strickland*) standard, it was unreasonable for Hinton's lawyer to fail to seek additional funds to hire an expert where that failure was based not on any strategic choice but on a mistaken belief that available funding was capped at $1,000." *Hinton*, 571 U.S. at 273. Unlike *Hinton*, DiMartino made it clear that he was aware that funds were available and that he could request additional funds if he saw fit. However, DiMartino made a strategic choice not to employ an eyewitness identification expert in this case.

In *Herring*, the defendant was part of a group of six that robbed an inn during which they shot five people, three of whom died. *Herring*, 2014-Ohio-5228, at ¶ 3. The defendant was convicted of three counts of complicity to commit aggravated murder, among other crimes, and was sentenced to death. *Id.* at ¶ 11. Subsequent postconviction proceedings focused on the effectiveness of counsel during mitigation. *Id.* at ¶ 19. The

defense's mitigation investigator revealed he did not have enough time to thoroughly investigate the case, did not know if defense counsel had the defendant examined by a psychologist, and in summary, that he had done a "substandard job of mitigation investigation." *Id.* at ¶ 36-38. On review by the Supreme Court of Ohio, it was determined that defense counsel assigned to represent capital defendants have a responsibility to ensure a thorough mitigation investigation was completed. *Id.* at ¶ 111. The Supreme Court concluded that due to the statements of the mitigation investigator and the evidence presented, trial counsel was ineffective. *Id.* at ¶ 111, 135. Thus, *Herring* did not and could not involve a strategic choice. Unlike *Herring*, DiMartino in the case at bar made a strategic choice after contemplating the use of an eyewitness identification expert.

Appellant also stresses that he was excluded as the source of DNA in the rape kit. However, "physical evidence is not required to support a rape conviction against a manifest weight challenge." *State v. Thomas*, 2015-Ohio-5247, ¶ 31 (9th Dist.). Notwithstanding the DNA exclusion, the lack of eyewitness identification expert testimony, and the fact that M.K.'s identification of Appellant was delayed, the record establishes evidence of Appellant's guilt, as addressed [in great detail]. . . .

DiMartino successfully convinced the jury to acquit Appellant of the aggravated robberies involving other victims, Cosa and Hammond, which took place right before the incident involving M.K. However, given the overwhelming evidence against Appellant regarding M.K., as addressed, any deficiency in trial counsel's performance does not allow for reversal on a claim of ineffective assistance of counsel. *See State v. Grate*, 2020-Ohio-5584, ¶ 137; *State v. Clinton*, 2017-Ohio-9423, ¶ 41.

Upon consideration, the trial court did not abuse its discretion in denying Appellant's petition for post-conviction relief following a hearing. The record establishes trial counsel's representation was constitutionally

effective and Appellant did not suffer prejudice. Appellant fails to demonstrate ineffective assistance of counsel under *Strickland*.

*Bunch*, 2024-Ohio-5085, ¶ 30-42.

{¶7} Appellant believes this court's decision in *Bunch*, 2024-Ohio-5085, is in conflict with decisions of the First, Fourth, Eighth, Eleventh, and Twelfth District Courts of Appeal. Upon review, we disagree.

{¶8} The First District in *Sargent* reversed and remanded the trial court's decision in an aggravated robbery, robbery, and having a weapon under a disability case following a jury trial. *Sargent*, 2006-Ohio-6823, ¶ 1. In that case, the First District held the trial court abused its discretion in denying Sargent's motion for the appointment of an eyewitness-identification expert. *Id.* at ¶ 13. Because Sargent made a particularized showing of a reasonable probability that the requested expert would aid in his defense and that the denial of the requested expert assistance would result in an unfair trial, due process required that he, an indigent criminal defendant, should have been provided funds to obtain expert assistance at state expense. *Id.* The facts in *Bunch* are different from those in *Sargent* and this court did not rule opposite to the holding of the First District on a rule of law. *Bunch* does not conflict with *Sargent.*

{¶9} The First District in *Echols* reversed and remanded the trial court's decision in a robbery, aggravated robbery, and kidnapping case following a jury trial. *Echols*, 128 Ohio App.3d 677, 685. The First District found "the trial court's conclusion that Dr. Fulero's testimony constituted a learned treatise, would not be helpful to the jury, and would invade its province was unsupported by the record and legally incorrect." *Id.* at 699. The facts in *Bunch* are different from those in *Echols* and this court did not rule opposite to the holding of the First District on a rule of law. *Bunch* does not conflict with *Echols.*

{¶10} The Fourth District in *Underwood* affirmed the trial court's decision in a voluntary manslaughter and aggravated assault case following a jury trial. *Underwood*, 2024-Ohio-2273, ¶ 1. The Fourth District found nothing in the record showing a reasonable probability that an expert would have aided in Underwood's defense. *Id.* at ¶ 106. The Fourth District considered not calling an expert a matter of trial strategy and

did not find that Underwood received ineffective assistance of counsel. *Id.* at ¶ 110. This court did not rule opposite to the holding of the Fourth District on a rule of law. *Bunch* does not conflict with *Underwood.*

**{¶11}** The Eighth District in *Bradley* affirmed in part, reversed in part, and remanded the trial court's decision in a robbery case following a jury trial. *Bradley*, 2009-Ohio-460, ¶ 1, 25. Because the state had no other evidence besides the victim's identification tying Bradley to the crime, the Eighth District concluded the trial court abused its discretion in denying Bradley's motion for the appointment of an eyewitness-identification expert. *Id.* at ¶ 16. The facts in *Bunch* are different from those in *Bradley* and this court did not rule opposite to the holding of the Eighth District on a rule of law. *Bunch* does not conflict with *Bradley.*

**{¶12}** The Eleventh District in *Bandy* affirmed the trial court's decision in a grand theft and forgery case following a jury trial. *Bandy*, 2008-Ohio-1494, ¶ 1. The Eleventh District found that "Bandy sought expert testimony on circumstances that generally impair the reliability of eyewitness identification." *Id.* at ¶ 43. Although a valid purpose, the Eleventh District held "it falls short of demonstrating that such testimony was essential to guaranteeing a fair trial." *Id.* The facts in *Bunch* are different from those in *Bandy* and this court did not rule opposite to the holding of the Eleventh District on a rule of law. *Bunch* does not conflict with *Bandy.*

**{¶13}** The Eleventh District in *Henderson* reversed and remanded the trial court's decision in a rape case following a jury trial. *Henderson*, 2002-Ohio-6715, ¶ 1. Dr. Dodgson examined the victim and was called as a witness in Henderson's first trial but not his second trial. *Id.* at ¶ 17-18. The Eleventh District found that defense counsel rendered ineffective assistance by not calling the doctor at the second trial. *Id.* at ¶ 21. The Eleventh District held "[t]his is not a situation where an attorney chose not to call his own expert and, instead, relied on cross-examination to discredit the state's case." *Id.* at ¶ 22. The facts in *Bunch* are different from those in *Henderson* and this court did not rule opposite to the holding of the Eleventh District on a rule of law. *Bunch* does not conflict with *Henderson.*

**{¶14}** The Eleventh District in *Brant* reversed and remanded the trial court's decision in a rape and kidnapping case. *Brant*, 2000 WL 1114845, *10. The key issue in

that case involved consent. *Id.* at \*8. The Eleventh District found there was a reasonable probability that the outcome of the trial would have been different had Dr. Kolaczewski testified. *Id.* at \*7. The Eleventh District clarified, "by no means should this court's opinion in this case be cited for a general proposition that failure to call an expert is *per se* ineffective assistance of counsel. Our conclusion in this case is supported by the facts of this case." *Id.* at \*8. The facts in *Bunch* are different from those in *Brant* and this court did not rule opposite to the holding of the Eleventh District on a rule of law. *Bunch* does not conflict with *Brant.*

**{¶15}** Finally, the Twelfth District in *Green* affirmed the trial court's decision in a murder and felonious assault case following a jury trial. *Green*, 2018-Ohio-3991, ¶ 16, 46. The Twelfth District found "nothing in the record to suggest that trial counsel's failure to call a crime scene reconstruction expert was anything other than a reasonable, tactical decision." *Id.* at ¶ 43. This court did not rule opposite to the holding of the Twelfth District on a rule of law. *Bunch* does not conflict with *Green.*

**{¶16}** Upon consideration, we find no conflict between the decision made by this court on October 22, 2024 and the cases cited by Appellant from our Sister Courts. Accordingly, Appellant's motion to certify a conflict is hereby overruled.

**JUDGE KATELYN DICKEY**

**JUDGE CAROL ANN ROBB**

**JUDGE MARK A. HANNI**

**<u>NOTICE TO COUNSEL</u>**

**This document constitutes a final judgment entry.**

<u>Case No. 24 MA 0030</u>